**Darcy J. ROBINSON, Appellant–Defendant,**

v.

**Robert J. WROBLEWSKI and Ann Wroblewski, Appellees–Plaintiffs.**

No. 02A03–9609–CV–341.

Court of Appeals of Indiana.

May 19, 1997.

Richard P. Samek, Larry L. Barnard, Miller Carson Boxberger & Murphy, L.L.P., Fort Wayne, for Appellant–Defendant.

Norman T. Funk, Donald D. Levenhagen, Alan J. Irvin, Indiana Defense Lawyers Association, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, Amicus Curiae.

John D. Ulmer, Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for Appellees–Plaintiffs.

Gregory H. Miller, Indiana Trial Lawyers Association, Wernle, Ristine & Ayers, Crawfordsville, Amicus Curiae.

## OPINION

HOFFMAN, Judge.

This appeal arises from a wrongful death action filed by the appellees-plaintiffs Robert and Ann Wroblewski as a result of the death of their son, Brian Wroblewski ("Brian"), in an automobile accident involving the appellant-defendant Darcy Robinson. Robinson brings this interlocutory appeal of the trial court's decision denying her motion to strike.

The undisputed facts relevant to the appeal reveal that on September 4, 1994, Brian was traveling westbound on State Road 45/46 By–Pass, while Robinson was traveling eastbound. The two automobiles collided, resulting in Brian's death. At the time of his death, Brian was 22 years old and was enrolled as a student at Indiana University in Bloomington, Indiana.

Brian's parents, Robert and Ann Wroblewski ("the Wroblewskis") filed their complaint for damages against Robinson on February 1, 1996, alleging that Brian's death was proximately caused by Robinson's negligence. Paragraph eight of the complaint states that "[a]s a result of the death of Brian, Mr. and Mrs. Wroblewski lost the love, comfort and companionship of Brian and will suffer such losses the rest of their lives." Along with her answer, Robinson filed a motion to strike requesting that the trial court strike paragraph eight of the Wroblewskis' complaint.

A hearing was held on Robinson's motion, and, on August 13, 1996, the trial court entered an order denying the motion to strike. Robinson now appeals the trial court's decision.

The sole issue raised on appeal is whether IND.CODE § 34–1–1–8 (1993 Ed.), Indiana's Child Wrongful Death Act, permits the recovery of damages for the loss of a child's love and companionship until the death of the last surviving parent.

Robinson and Amicus Curiae Indiana Defense Lawyers Association contend that paragraph eight of the Wroblewskis' complaint should be stricken because IND. CODE § 34–1–1–8 expressly limits damages for the loss of love and companionship of a child to the time period from the child's death until he reaches age 20 (or 23 in this case where the child was enrolled in an institution of higher education) and not for the remainder of the last surviving parent's life. IND.CODE § 34–1–1–8 provides, in pertinent part, that:

(e) In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of:

(A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death;

(B) the child's funeral and burial;

(C) the reasonable expense of psychiatric and psychological counseling incurred by a surviving parent or minor sibling of the child that is required because of the death of the child;

(D) uninsured debts of the child, including debts for which a parent is obligated on behalf of the child; and

(E) the administration of the child's estate, including reasonable attorney's fees.

(f) Damages may be awarded under this section only with respect to the period of time from the death of the child until:

(1) the date that the child would have reached:

(A) twenty (20) years of age; or

(B) twenty-three (23) years of age, if the child was enrolled in an institution of higher education or in a vocational school or program; or

(2) the date of the child's last surviving parent's death;

whichever first occurs.

(g) Damages may be awarded under subsection (e)(2) only with respect to the period of time from the death of the child until the date of the child's last surviving parent's death.

In considering the issue before us, a brief reference may be made to the origin and development of wrongful death statutes. At common law, there was no liability in tort for killing another because actions for personal injury did not survive the death of the injured party. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind.Ct.App.1994), *adopted by* 678 N.E.2d 110 (Ind.1997). Our legislature first authorized an action for wrongful death in 1852, following the adoption of our present Constitution in 1851. *Miller v. Mayberry*, 506 N.E.2d 7, 9 (Ind. 1987), *aff'd by* 546 N.E.2d 834 (Ind.1989). This predecessor statute to IND.CODE § 34–1–1–8, which provided for a wrongful death remedy, was later interpreted to create an independent cause of action personal to the parent upon the continued existence of the parent-child relationship. *Id.* at 10. However, the recovery was seen to extend to pecuniary loss, that is, the loss of services the parent might have expected from the child during the child's minority and until the child became emancipated. *Id.* It was not until 1987 that IND.CODE § 34–1–1–8 was amended to allow a parent seeking recovery for the wrongful death of a child to recover damages for loss of love and companionship. *See Herriman v. Conrail, Inc.*, 887 F.Supp. 1148, 1155 (N.D.Ind.1995). The amendment came in response to our supreme court's decision in *Miller* which opined, in relevant part, that:

> The Court of Appeals was led to the inescapable conclusion that the trial court once again improperly awarded damages for loss of love and affection. Our examination of the judgment of the trial court on remand leads us to the same conclusion. We, however, do not agree with the Court of Appeals, nor the petitioner here, that, "If the pecuniary loss rule concerning the measure of damages in an action for a wrongful death of a minor child is to be changed, that change must come from our Supreme Court." We hold the change must come from the Legislature.

*Miller*, 506 N.E.2d at 11.

In response to the *Miller* decision, the legislature commenced to amend IND.CODE § 34–1–1–8 to include the recovery of damages for the loss of a child's love and companionship. A review of that process reveals that when the legislation, which ultimately became the current IND.CODE § 34–1–1–8, was originally filed as Senate Bill 2 on November 18, 1986, it provided, in pertinent part, that:

(d) In an action to recover for the death of a child, the plaintiff may recover damages:

(1) for the loss of the child's services;

(2) for the loss of the child's love and companionship; and

(3) to pay the expenses of:

(A) health care and hospitalization necessitated by the wrongful act or omission that caused the child's death; and

(B) the child's funeral and burial.

(e) Damages may be awarded under subsection (d)(1) only with respect to the period of time from the death of the child until:

(1) the date that the child would have reached eighteen (18) years of age; or

(2) the date of the child's last surviving parent's death; whichever first occurs. However, those damages must be reduced by an amount equal to the reasonable expenses that would have been incurred by the plaintiff with respect to the rearing of the child.

(f) Damages may be awarded under subsection (d)(2) only with respect to the period of time from the death of the child until the date of the child's last surviving parent's death.

Senate Bill No. 2, 105th Indiana General Assembly (1987): November 18, 1986 printing.

The original Senate Bill No. 2 further provided that:

(g) The trier of fact shall make a separate finding with respect to damages under subsection (d)(2). Damages under that subsection may not:

(1) be less than ten thousand dollars ($10,000); or

(2) exceed thirty-five thousand dollars ($35,000).

(h) The jury may not be advised of the monetary limits placed on damages under subsection (g). If the jury awards the plaintiff damages under subsection (d)(2) in an amount less than ten thousand dollars ($10,000), the court shall increase that part of the award ten thousand dollars ($10,000). If the jury awards the plaintiff damages under subsection (d)(2) in an amount that exceeds thirty-five thousand dollars ($35,000), the court shall reduce that part of the award to thirty-five thousand dollars ($35,000).

*Id.*

On April 8, 1987, Engrossed Senate Bill No. 2 was amended on the floor of the House on second reading to include the following policy statements:

SECTION 2. (a) It is the purpose of this chapter to establish a public policy for the recognition of the value of a child who has been wrongfully killed. The temporary limit established by this chapter for the loss of the love and companionship of a child is to enable insurers of wrongdoers to phase in their experience tables and is for no other stated purpose.

(b) For causes of action under this act accruing after May 7, 1987, and before May 1, 1990, damages awarded under I.C. § 34–1–1–8(d)(2), as added by this act, may not .exceed one hundred thousand dollars ($100,000).

(c) This SECTION expires May 1, 1990.

SECTION 3. (a) I.C. § 34–1–1–8(d)(2), as added by this act, requiring a court to reduce damages awarded for the loss of a child's services by an amount equal to the reasonable expenses of rearing the child does not apply to causes of action under this act accruing before May 1, 1990.

(b) This SECTION expires May 1, 1990.

*Indiana House Journal,* Regular and Special Sessions (1987), 799.

On April 24, 1987, five days before adjournment of the Regular Session, the conference committee of the Senate and House, to which engrossed house amendments to Engrossed Senate Bill No. 2 had been assigned, reported an agreement which served to delete the policy statements set forth above, to add a new subsection (a), to reletter the remaining subsections in sequence, thereby changing previous subsection (d) to (e), and to add three new sections, two of which provide in pertinent part:

SECTION 2. (b) In an action brought under I.C. § 34–1–1–8, as amended by this act, the trier of fact shall make a separate finding with respect to damages under I.C. § 34–1–1–8(e)(2).

(c) This SECTION expires November 1, 1992.

SECTION 3. (a) The limitation on damages described in this subsection does not apply to causes of action brought under I.C. § 34–1–1–8, as amended by this act, that accrue after October 31, 1990. Damages recoverable under I.C. § 34–1–1–8(e)(2) may not exceed one hundred thousand dollars ($100,000).

(b) In an action brought under I.C. § 34–1–1–8, as amended by this act, the jury may not be advised of the monetary limits placed on damages under subsection (1). If the jury awards the plaintiff damages under I.C. § 34–1–1–8(e)(2) in an amount that exceeds one hundred thousand dollars ($100,000), the court shall reduce that part of the award to one hundred thousand dollars ($100,000).

(c) This SECTION expires November 1, 1992.

*Indiana House Journal,* Regular and Special Sessions (1987), 975–76. The conference committee also made the following additional amendment to the Bill: "Page 2, line 31, delete 'subsection (d)(1)' and insert in bold 'this section.'" *Id.* at 975.

In spite of the extensive revisions made to IND.CODE § 34–1–1–8, the dispute in the instant case, nevertheless, arises from the legislature's deletion of the phrase "subsection (d)(1)" and insertion of the phrase "this section." With the amendment, the statute reads:

(f) Damages may be awarded under *this section* only with respect to the period of time from the death of the child until:
(1) the date that the child would have reached:
(A) twenty (20) years of age; or
(B) twenty-three (23) years of age, if the child was enrolled in an institution of higher education or in a vocational school or program; or
(2) the date of the child's last surviving parent's death;
whichever first occurs.
(g) Damages may be awarded [for the loss of the child's love and companionship] under subsection (e)(2) only with respect to the period of time from the death of the child until the date of the child's last surviving parent's death.

IND.CODE § 34–1–1–8. With the amendment to IND.CODE § 34–1–1–8 revising subsection (f), the statute became ambiguous with regard to whether subsections (f) and (g) contain independent limitations on the damages recoverable under subsection (e)(1), for the loss of the child's services, and subsection (e)(2), for the loss of the child's love and companionship. *See Herriman,* 887 F.Supp. at 1157.

According to Robinson, "the 'legislative history' relied upon by the trial court supports the premise that it was the intent of the General Assembly to limit all damages, including the damages for loss of love and companionship, to the time period ending, at the latest, with the age of majority of the

decedent child." The Wroblewskis and Amicus Curiae Indiana Trial Lawyers Association counter by arguing that it violates common sense to recognize that the legislature intended to add a form of recovery that allows long-term damages, while contending that the legislature limited those damages to the period of the child's minority.

In support of her argument, Robinson relies upon *Herriman v. Conrail, Inc.,* 887 F.Supp. 1148 (N.D.Ind.1995). In *Herriman,* where a 19–year–old died as a result of a railroad grade crossing collision, the district court was faced with the issue of whether under Indiana's Child Wrongful Death Act damages for loss of love and companionship of a child are only available until the child would have reached the age of 20, or at the latest 23, or until the death of the child's last surviving parent.

In the opinion, Magistrate Judge Cosbey reviewed Indiana common law regarding the parents' recovery of damages for a child's death as well as the legislative history of Indiana's Child Wrongful Death Act. Magistrate Judge Cosbey held that the parents of the deceased child were "entitled to damages for the lost love and companionship of [their child], but only until such time as he would have attained twenty years of age; or, depending upon the evidence, perhaps twenty-three years of age." *Id.* at 1158. In so holding, Magistrate Judge Cosbey stated:

In interpreting subsection (g), the Court must attempt to give effect and meaning to its language, so that it can be reconciled with the rest of the statute. In doing so, it is hard to escape the observation that the statute, on its face, appears to be imprecisely drafted, probably due somewhat to the haste in which the Legislature acted following the *Miller* decision, and because this area of the law can be factually sensitive and legally complex. Nonetheless, one basis upon which subsection (g) can be explained is the situation where the child has been placed with a custodian (perhaps a grandparent or adult sibling) with the child then predeceasing the parents who subsequently die before the child would have attained twenty years of age. Despite the fact that the guardian or custodi-

an may have developed an affectionate bond with the minor child, resulting in having sustained the lost love and companionship of the child, those damages cease with the death of the last surviving parent. Thus subsection (g) underscores the Legislature's view that damages pursuant to subsection (e)(2) must cease with the death of the parents no matter who asserts the loss.

Another possible explanation is that while an action can also be maintained for injury to a child, Indiana Code section 34–1–1–8(b)(d), the Legislature chose not to catalog the damages that could be awarded in such a situation. Since the Legislature apparently chose to allow the common law to dictate the proper measure of such damages, it is conceivable that a party could argue that they were entitled to the loss of a child's companionship due to a negligently-caused injury. In such a situation, given the language of subsection (g), the Legislature may have intended to limit damages for lost love and companionship to "only" child death cases—not child injury situations....

While the foregoing are simply two possible explanations for subsection (g), there may be other more intensely factual situations that were contemplated by the Legislature but which are not readily apparent. In any event, it is the job of the Legislature to draw such lines, and they have apparently chosen to draw them in the fashion revealed here.

*Id.* at 1157–58 (Citations omitted.).[1]

Robinson urges this Court to follow the reasoning set forth in *Herriman*, construe all of the subsections of the statute in a harmonious manner, and hold that the only construction rendering the statute harmonious is one where recovery of damages for loss of love and companionship in a child wrongful death action is limited to that period of time prior to the date of the child's majority. According to Robinson, any other construction of the statute would cause a direct conflict between subsections (f) and (g).

 We agree with Robinson that because common law did not recognize an action for damages for wrongful death, IND. CODE § 34–1–1–8, being in derogation of common law, must be strictly construed. *Chamness v. Carter,* 575 N.E.2d 317, 319 (Ind.Ct.App.1991). In reviewing a statute, the foremost objective is to determine and effect the intent of the legislature. *Id.* Statutes are examined and interpreted as a whole, giving words their common and ordinary meaning and not overemphasizing strict, literal or selective reading of individual words. *Id.* The legislative intent as ascertained from an act as a whole prevails over the strict, literal meaning of any word or term used therein. *Id.* Furthermore, statutes are to be read as a whole. *Id.* Where possible, every word in the statute must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.*

In construing a statute to ascertain the intent of the legislature, the Court should consider the object or purpose of the statute and the evils and mischiefs sought to be remedied. 26 I.L.E. Statutes § 114 (1960). Thus, this Court should consider the occasion and necessity for the law, the causes which induced its enactment, as well as the remedy to be afforded and the benefits to be derived. *Id.*

Prior to the 1987 amendment, Indiana's Wrongful Death Act did not allow for the recovery of loss of a child's love and companionship. From the time the right to recover for the wrongful death of a child was first

---

1. It should be noted that the United States District Court for the Southern District of Indiana issued an order in the cause of *Carper v. John Allen Tuning,* No. EV 96–19–C–D/H (N.D.Ind. filed Jan. 28, 1997), in which the court was asked to reconsider its earlier grant of partial summary adjudication holding that the plaintiffs' damages for loss of their child's love and companionship were limited to the time of the child's minority. Upon reconsideration of IND.CODE § 34–1–1–8(f), the court set aside its previous order and determined that:

> [T]he court, having considered the statute in question is of the opinion and now finds that the same is ambiguous, but that damages for the loss of a child's love and companionship may be awarded for the period of time from the death of the child until the date of the child's last surviving parent's death.

recognized until the 1987 amendment, damages for a parent suing for the death of a minor child were limited by the pecuniary loss rule. *Miller*, 506 N.E.2d at 8. Under the rule, recovery was seen to extend to the loss of services the parent might have expected from the child during his or her minority and until the child became emancipated. *Id.* at 10 (citing *Mayhew v. Burns,* 103 Ind. 328, 333, 2 N.E. 793, 795 (1885)).

After the challenge issued by our supreme court in *Miller,* the legislature sought to undo the potentially limited recoveries previously governed by the pecuniary loss rule and allow parents to recover damages for the loss of a child's love and companionship. In reviewing the more recent legislative history of IND.CODE § 34–1–1–8, from the time of its inception when filed as Senate Bill No. 2 through its enactment after amendment by the General Assembly, it appears that the legislature intended to create and delineate two specific and independent damages recoverable for the wrongful death of a child: damages recoverable for loss of a child's services and damages recoverable for loss of a child's love and companionship. This Court is not disposed to interpret that legislative effort in a restrictive manner so that it achieves less than was intended by those who passed it. Therefore, we approach construction of IND.CODE § 34–1–1–8 in the spirit urged by Justice Cardozo when, quoting Justice Holmes in *Van Beeck v. Sabine Towing Co., Inc.,* 300 U.S. 342, 350–51, 57 S.Ct. 452, 456, 81 L.Ed. 685 (1937), he said:

> Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the statute now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day.

■ With the amendment of IND.CODE § 34–1–1–8, the legislature not only reiterated its intention to allow a parent to recover pecuniary losses for the wrongful death of a child, but also added an allowance for the parent to recover for the loss of a child's love and companionship. In our opinion, the legislature intended to create two distinct recoveries for the wrongful death of a child. We further find, however, that the legislature intended to limit recovery for the pecuniary losses to the period equivalent to the child's minority or the date of the child's last surviving parent's death, whichever first occurs. Whereas, the legislature's intent with respect to the recovery of damages for the loss of a child's love and companionship may be awarded solely to a period of time from the death of the child until the date of the child's last surviving parent's death.

Common sense supports what the text and purpose of the statute intended to accomplish. Could it be fairly maintained that it was the legislature's intention to limit the damages which a parent could recover for the loss of a child's love and companionship for a period of one year remaining between the death of the child and the date when the child would have attained majority? We think not. If the legislature had intended to limit the period for which such damages could be recovered, it could have easily said so by making the limitations of the pecuniary loss damages expressly applicable to the loss of love and companionship damages. *See Barrett v. Charlson,* 18 Md.App. 80, 94, 305 A.2d 166, 175 (1973).

We interpret IND.CODE § 34–1–1–8 to permit damages for the loss of love and companionship of a child until the death of the child's last surviving parent. The trial court correctly denied Robinson's motion to strike paragraph eight of the Wroblewski's complaint which seeks to recover damages for loss of their son's love and companionship

for "the rest of their lives." The judgment of the trial court should be affirmed.

Affirmed.

GARRARD and FRIEDLANDER, JJ., concur.